```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION
```

PAM MARTIN, SUSAN CHANCELOR,
AND FAYE FREEMAN                                 PLAINTIFFS

VS.                        CIVIL ACTION NO. 3:06-cv-55-WHB-LRA

MASELLE & ASSOCIATES, INC.,
MASELLE SCHOOL OF REAL ESTATE, INC.,
and DAVE DAVIS                                   DEFENDANTS


                       OPINION AND ORDER

     This cause is before the Court on several motions filed by the

parties.   The Court has considered the Motions, Responses,

Rebuttals, attachments to each, as well as supporting and opposing

authorities and finds:

     The Motion of Plaintiff Pam Martin to Seal Plaintiff Pam

Martin's Deposition Testimony, Plaintiff Susan Chancelor's

Deposition Testimony, and the Expert Report of Dr. Mary Louise

Barksdale ("Motion to Seal") is not well taken and should be

denied.

     The Motion of Defendants Maselle & Associates, Inc., and the

Maselle School of Real Estate, Inc., for Relief from Page

Limitation is well taken and should be granted.

     The Motion of Defendants Maselle & Associates, Inc., and

Maselle School of Real Estate, Inc., to Strike should be granted in

part and denied in part.

The Motion of Defendant Maselle School of Real Estate, Inc., for Summary Judgment should be granted in part and denied in part.

The Motion of Defendant Maselle & Associates, Inc., for Summary Judgment should be granted in part and denied in part.

The Motion of Defendant Dave Davis for Summary Judgment is well taken and should be granted.

## I.  Factual Background and Procedural History

To be a real estate agent in Mississippi, an individual must complete sixty hours of pre-licensing instruction, pass a licensing examination, and receive continuing education after being licensed. In 2003, the owners of Defendant Maselle & Associates, Inc., ("M & A"), a corporation engaged in the real estate business, decided to open a school at which an individual could receive the required hours of pre-licensing instruction and continuing education. Thereafter, Doug Maselle ("Maselle") began discussions with Defendant Dave Davis ("Davis") who agreed to "start-up" the school, develop a curriculum, and teach most of the classes.

On November 12, 2003, the Maselle School of Real Estate, Inc., ("School") was created, with Maselle serving as President and Davis serving as Vice President and Director.[1] When the School opened in February of 2004, classes were held in classrooms the School leased at another site, while Davis's office was located in the same

---

[1]   Maselle is also the President of M & A.

building as M & A.   In October of 2004, the School leased other property and moved both its classes and administrative offices to that location.

In July of 2003, Plaintiff Faye Freeman ("Freeman") was hired by M & A to recruit and train new agents for that company.   On February 22, 2004, Freeman entered a separate contract with the School to teach some of its courses.   Freeman alleges that while working with Davis he made two sexually suggestive comments to her, intentionally rubbed his arm across her breast while reaching for a document, and fondled himself in her presence.   Freeman, in accordance with the written procedures of M & A, reported one of the allegedly inappropriate sexual remarks to Maselle in August of 2004.   Maselle, in turn, immediately confronted Davis with Freeman's allegations.   After that time, Freeman did not make any further complaints regarding Davis's allegedly inappropriate conduct.   Freeman stopped teaching classes for the School in January of 2005, and left her employment with M & A in December of that same year.

In June of 2004, Plaintiff Susan Chancelor ("Chancelor") was hired by the School as an administrative assistant.   Chancellor alleges that while working with Davis he made numerous inappropriate comments, fondled himself in her presence, and on one occasion showed her a pornographic e-mail he had received. Chancelor further alleges that she complained to Freeman regarding

3

Davis's conduct but did not make any complaints to Maselle.
Chancelor resigned from her employment at the School on April 11,
2005, approximately one month earlier than she had previously
anticipated, because of questions she was asked regarding Plaintiff
Pam Martin.

Plaintiff Pam Martin ("Martin") was hired as an independent
contractor to produce a marketing brochure for the School in July
of 2004.  Martin further alleges that in August of 2004 she was
hired by Davis to be the Director of Sales and Marketing for the
School.  Martin alleges that while working with Davis he made
numerous sexually suggestive comments to her, inappropriately
touched her thigh and other parts of her body, approached her in a
sexually suggestive manner, and fondled himself in her presence.
Martin further alleges that she reported Davis's harassing conduct
to Maselle (a claim Maselle denies) but that no remedial action was
taken.  Martin's employment with the School ended in April of 2005
when she "refused to go back to work under the circumstances."

Based on the foregoing allegations, each Plaintiff filed a
Charge of Discrimination with the Equal Employment Opportunity
Commission ("EEOC") and received a Right to Sue Notice in November
of 2005.  On January 27, 2006, Plaintiffs filed a lawsuit in this
Court alleging federal law claims of sexual harassment and
retaliation under Title VII of the Civil Rights Act of 1964,
codified at 42 U.S.C. § 2000e *et seq.*, and state law claims of

negligence, gross negligence, wrongful termination, and intentional/negligent infliction of emotional distress against M & A, the School, Davis, Century 21 Real Estate, LLC, and Cendant Corporation. On October 18, 2006, the claims of Plaintiffs Freeman and Chancelor against Davis were dismissed with prejudice. On March 12, 2007, Plaintiffs' claims against Century 21 Real Estate, LLC, and Cendant Corporation were likewise dismissed.

Defendants M & A and the School now move for summary judgment on Plaintiffs' Title VII claims and their state law claim of intentional infliction of emotional distress. Defendant Davis has moved for summary judgment on Martin's Title VII claims, and urges the Court to refrain from exercising supplemental jurisdiction over her remaining state law claims.

## II.  Legal Analysis

### A.  Motion to Seal

Through the subject Motion to Seal, Martin seeks to seal the Expert Report of Dr. Mary Louise Barksdale ("Barksdale"), the deposition transcript of Susan Chancelor, and her own deposition transcript. Pursuant to Rule 83.6(B) of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi ("Local Rules"):

> Court records or portions thereof shall not be placed
> under seal unless and except to the extent that the
> person seeking the sealing thereof shall have first
> obtained, for good cause shown, an order of the court

> specifying those court records, categories of court
> records, or portions thereof, which shall be placed under
> seal ....

The record shows that prior to filing the subject Motion to Seal,
Plaintiffs filed Barksdale's Expert Report with the Court as an
exhibit to their designation of expert witnesses and as an exhibit
to their Response to the Motion of Defendants Century 21 Real
Estate, LLC, and Cendant Corporation to Strike.  The record also
shows that after the Motion to Seal was filed, but before it was
decided, Plaintiffs filed Martin and Chancelor's deposition
transcripts, *in toto*, as exhibits to their Response to the Motions
of M & A and the School for Summary Judgment.  The Court finds that
as Martin herself elected to file Barksdale's Expert Report as well
as the subject deposition transcripts in support of her claims, she
has not shown good cause for sealing these documents.  Accordingly,
the Court finds that the Motion to Seal should be denied.


**B.  Motion to Strike**

     Through their Motion to Strike, Defendants M & A and the
School seek to strike several exhibits attached to Plaintiffs'
Response to the Motions for Summary Judgment.

     First, with regard to the deposition transcripts of Martin,
Chancelor, Freeman, and Maselle, M & A and the School move to
strike those portions of the transcripts that were not specifically
cited by Plaintiffs in their Response to the Motions for Summary

Judgment.   Plaintiffs argue that they have specifically cited to portions of the subject transcripts, but merely "attached the complete depositions so that the Court – if it so chooses – may examine the complete record to garner a complete picture of the depositions."  Resp. to Mot. to Strike, 3.

Under Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs, as the non-moving parties, have the burden of designating "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In accordance with this Rule, the Court will consider the portions of the subject transcripts that have been specifically cited by Plaintiffs when considering the pending motions for summary judgment.  The Court will not, however, peruse the entire transcripts in search of genuine issues of material fact that would preclude entry of summary judgment.  Accordingly, as M & A and the School seek to strike only the non-cited portions the subject transcripts, the Court finds that the Motion should be granted.

Next, M & A and the School seek to strike the affidavits Plaintiffs submitted to the EEOC ("EEOC Affidavits") on the basis that they are "rife with supposition, hearsay and other inadmissible matters."  Mot. to Strike, 2.  Under Rule 56(e) of the Federal Rules of Civil Procedure, affidavits submitted in support of, or in opposition to, a motion for summary judgment must set forth "facts as would be admissible in evidence."  In light of this

Rule, the Court has examined the EEOC Affidavits and finds that some, but not all, of the information contained therein would be inadmissible under the Federal Rules of Evidence.  As M & A and the School seek to strike the EEOC Affidavits in their entirety, the Court finds that the subject Motion should be denied.

Finally, M & A and the School seek to strike portions of Pamela Martin's Affidavit that was submitted in support of Plaintiffs' Response to the underlying motions for summary judgment.  First, M & A and the School seek to strike paragraphs 8 through 11 of Martin's Affidavit in which she avers:

> 8.  At the time I undertook the contract to prepare the brochure and marketing materials for Maselle and Associates/Maselle School of Real Estate, I provided my own cell phone and paid for my cell phone service.
>
> 9.  At the time I undertook the contract to prepare the brochure and marketing materials for Maselle and Associates/Maselle School of Real Estate, I provided my own computer.
>
> 10.  At the time I undertook the contract to prepare the brochure and marketing materials for Maselle and Associates/Maselle School of Real Estate, I printed and paid for my own business cards.
>
> 11.  At the time I undertook the contract to prepare the brochure and marketing materials for Maselle and Associates/Maselle School of Real Estate, I paid my own expenses.

Resp. to Mot. for Sum. J. [Docket No. 210], Ex G. (Martin Affidavit), at ¶¶ 8-11.  M & A and the School argue that the Court should strike this portion of Martin's Affidavit because it

conflicts with her earlier deposition testimony, which is as follows:

> Q.   Did you ever receive any payment for any work from Maselle & Associates, Inc.?
>
> A.   No.
>
> Q.   And the marketing efforts that you said you were doing were for Maselle School of Real Estate, Inc., correct?
>
> A.   That's correct.
>
> Q.   Did you ever do any marketing for Maselle & Associates, Inc.?
>
> A.   No.  I did assist with a real estate flyer in some capacity.  I don't remember exactly what it was.
>
>        ....
>
> A.   I think it was just – there was a discussion about printing services.  I think I directed them to Hederman Brothers.
>
> Q.   So they asked who they should use, and you told them to call Hederman Brothers?
>
> A.   Yes.
>
> Q.   Was that the extent of you assistance?
>
> A.   I believe, yes.
>
> Q.   Were you paid anything for telling them?
>
> A.   No.

Mot. to Strike, Ex. A (Martin Dep.) at 62-63.

Regarding affidavits that contradict prior deposition testimony, the United States Court of Appeals for the Fifth Circuit has held:  "It is well settled that this court does not allow a

party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 495 (5th Cir. 1996) (citing <u>Thurman v. Sears, Roebuck & Co.</u>, 952 F.2d 128, 137 n.23 (5th Cir. 1992); <u>Albertson v. T.J. Stevenson & Co.</u>, 749 F.2d 223, 228 (5th Cir. 1984)). Therefore, if "an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." <u>Id.</u> at 496 (citations omitted). In the case *sub judice*, Martin's deposition testimony clearly demonstrates that she did not prepare a brochure or otherwise do any marketing work for M & A. In her post-deposition affidavit, however, Martin avers that she prepared a brochure and did marketing work for M & A. No explanation for these contradictory statements has been provided.

The Court finds that Martin's post-deposition Affidavit contradicts her prior deposition testimony and that she has not offered any information to explain these contradictions. The Court, therefore, will not consider the contradictory statements in Martin's Affidavit when deciding the underlying motions for summary judgment. Accordingly, the Court finds that the Motion to Strike should be granted as to those portions of Martin's Affidavit regarding whether she created a brochure or did marketing work for M & A, but should be denied as to those portions of Martin's

Affidavit regarding whether she created a brochure or did marketing work for the School.

Second, M & A and the School seek to strike paragraphs 19 through 24 Martin's Affidavit in which she avers that M & A compensated her for mileage, travel expenses, entertainment, meals, cell phone expenses, and business cards. Resp. to Mot. for Sum. J. [Docket No. 210], Ex G. (Martin Affidavit), at ¶¶ 19-24. It is clear that these statements again contradict Martin's prior deposition testimony in which she stated she did not receive any payment for any work from M & A. See Mot. to Strike, Ex. A (Martin Dep.), at 62. Again Martin has not provided any explanation for these contradictory statements. Additionally, M & A and the School have produced documents showing that Martin submitted her expenses to the School, and that the School reimbursed those expenses by issuing checks drawn from its own checking account. See Mot. to Strike, Ex. B (Maselle Affidavit and exhibits thereto). Accordingly, the Court finds that the Motion to Strike those portions of Martin's Affidavit regarding whether she was paid or otherwise reimbursed by M & A should be granted.

Third, M & A and the School seek to strike paragraphs 29 and 30 of Martin's Affidavit in which she avers:

> 29. I was presented with an independent contractor agreement, though I did not sign the agreement.

> 30. I presented the agreement to an attorney who advised me not to sign the agreement.

Resp. to Mot. for Sum. J. [Docket No. 210], Ex G. (Martin Affidavit), at ¶¶ 29-30. M & A and the School argue that the Court should strike these portions of Martin's Affidavit because it is "demonstrably false." Martin's averments, however, are supported by the Affidavit of Davis who averred: (1) the School presented a proposed independent contractor agreement to Martin, which she did not sign, and (2) thereafter Martin submitted a proposed counter agreement, which she did sign, to Davis for his consideration. See Mot. to Strike, Ex. D (Davis Affidavit). Accordingly, the Court finds that the Motion to Strike those portions of Martin's Affidavit regarding the independent contractor agreement should be denied.

## C.  Motions for Summary Judgment

### 1.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the op-ponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-

<u>Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

**2.   Title VII Claims**

An "employer", for the purposes of assessing liability under Title VII, is statutorily defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person ...."  42 U.S.C. § 2000e(b).

Davis has moved for summary judgment on Martin's Title VII claims arguing first that he is not her "employer", and second that she cannot assert such claims against individual employees.  In response, Martin concedes "that no cause of action may be brought against Dave Davis individually", and she does not otherwise dispute that Davis is entitled to summary judgment on her Title VII claims.  <u>See</u> Resp. to Mot. of Davis for Sum. J., 2.  Accordingly, the Court finds that Davis is entitled to summary judgment on Martin's Title VII claims.

The School has moved for summary judgment on Plaintiffs' Title VII claims arguing that it lacks the requisite number of employees

14

to be considered an "employer" for the purposes of imposing liability under that Act. M & A has moved for summary judgment arguing that because Plaintiffs' Title VII claims are based on actions allegedly taken by Davis, and as M & A was not Davis's employer, it cannot be held liable for his alleged conduct. Plaintiffs respond by claiming that the School and M & A constitute an "integrated enterprise." Plaintiffs argue that as an integrated enterprise, the School and M & A combined have a total of more than fifteen employees thereby allowing the School to be held liable under Title VII. Plaintiffs further argue that as an integrated enterprise, Davis is an employee of both M & A and the School for the purpose of imputing liability for his alleged conduct. The issue before the Court is whether M & A and the School constitute an integrated enterprise for the purposes of Title VII. For the following reasons, the Court finds they do not.

For the purposes of Title VII:

> [T]he rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983). "Traditionally, the second of these four factors has been considered the most important, such that courts focused almost

exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination?" Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 611 (5th Cir. 1999). See also Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 765 (5th Cir. 1997) ("The critical question is the following: which entity made the final decision regarding employment matters related to the person claiming discrimination?"); Chaiffetz v. Robertson Research Holding, Ltd., 798 F.2d 731, 735 (5th Cir. 1986) ("We place highest importance in the second Trevino factor, rephrasing and specifying it so as to boil down to an inquiry of 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.'") (alterations in original).

In support of their claim that M & A and the School constitute an integrated enterprise, Plaintiffs have presented some proof of interrelation of operations (the administrative offices of the School were, for some time, located in the same building as M & A; the same bookkeeper "handled the books" for both corporations; the School used the same telephone system as M & A; and M & A supplied a laptop computer for Martin's use) and of common ownership (the owners of M & A decided to form the School and several individuals serve as officers for both M & A and the School simultaneously). The Court finds, however, that based on this evidence neither the Court nor a reasonable jury could find the existence of an

16

integrated enterprise.  See e.g. Johnson v. Crown Enters., Inc., 398 F.3d 339 343 (5th Cir. 2005) (finding that corporations which operated out of the same building, shared secretarial and administrative support services, and were owned by the same family, did not constitute an integrated enterprise for the purposes of imposing Title VII liability); Vance v. Union Planters Corp., 279 F.3d 295, 302 (5th Cir. 2002) (finding that evidence of interrelated operations, which included that the corporations filed consolidated SEC reports and tax returns, had one corporation serving as the centralized payroll entity, and operated under Common Management Agreements, did not demonstrate an integrated enterprise); Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 779 (5th Cir. 1997) (finding that evidence that corporations were headquartered in the same building and shared the same telephone number was not sufficient to show the existence of an integrated enterprise).

On the critical issue of "which entity made the final decisions regarding employment matters relating to the person claiming discrimination", the only evidence offered by Plaintiffs is that Doug Maselle is the President of both M & A and the School, and that he was in charge of hiring and firing for both corporations.  This evidence is insufficient to show a centralized control of labor relations between M & A and the School.  As explained by the Fifth Circuit, officers holding positions in two

17

corporations "can and do 'change hats' to represent two corporations separately, despite their common ownership." Lusk, 129 F.3d at 779.  Therefore, to demonstrate centralized control of labor relations, Plaintiffs must produce evidence that Maselle, when making hiring, firing, or other employment decisions for the School was acting in his capacity as President of M & A, or *vice versa*.  See e.g. Johnson, 398 F.3d at 344 (finding that the plaintiff failed to demonstrate the existence of centralized control of labor relations or of an integrated enterprise in a case in which there was no evidence that one corporation made the employment decisions for the other); Lusk, 126 F.3d at 779 (citing Greason v. Southeastern R.R. Assoc. Bureaus, 650 F. Supp. 263, 268 (N.D. Ga. 1986) ("failure to adduce evidence of which entity the common decision-maker represented required summary judgment on the single employer issue").  Here, Plaintiffs have not produced such evidence, and have not presented any other evidence that would support a finding that there existed centralized control of labor relations between M & A and the School.

Although the Plaintiffs have presented some evidence of interrelation of operations and common ownership between M & A and the School, Plaintiffs have not presented any evidence on the critical issue of whether M & A made employment decisions for the School or whether there existed a centralized control of labor relations between these two corporations.  As such the Court finds

that Plaintiffs have failed to show that there exists a genuine issue of material fact on the issue of whether M & A and the School constitute an integrated enterprise. Additionally, after considering the facts as a whole, the Court finds that M & A and the School should not be so treated for the purposes of Title VII.

Returning now to the Motions for Summary Judgment, the School argues that it is entitled to summary judgment on Plaintiffs' Title VII claims because it lacks the requisite number of employees to be considered an "employer" under the Act. On this issue, the parties dispute whether Freeman, Martin, and/or Davis were employees or independent contractors of the School. The Court finds, however, that even if these individuals were found to be employees, the School employed not more than four employees and, therefore, cannot be considered an "employer" under Title VII.[2] See 42 U.S.C. § 2000e(b) (defining an "employer" under Title VII as one "who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ..."). As the School cannot be considered an "employer" under Title VII, the Court finds that it is entitled to summary judgment on Plaintiffs' Title VII claims.

M & A has moved for summary judgment on Plaintiffs' Title VII claims by arguing that as it was not Davis's employer, it cannot

---

[2] It is undisputed that Plaintiff Chancelor was an employee of the School.

held liable for his allegedly harassing conduct.  Plaintiffs have not presented any evidence that Davis was an employee of M & A. Instead, the only argument offered by Plaintiffs is that because Davis was an employee of the School, and further because the School and M & A constitute an integrated enterprise, Davis should likewise be considered an employee of M & A.  See Resp. to Mot. for Sum. J. [Docket No. 210], at 11.  As the Court has previously found that the School and M & A are not an integrated enterprise for the purposes of Title VII, the Court finds no basis for (1) concluding that Davis should be considered an employee of M & A or (2) permitting Plaintiffs' to hold M & A vicariously liable for Davis's alleged conduct.  Accordingly, the Court finds that M & A is entitled to summary judgment on Plaintiffs' Title VII claims.

In sum, the Court finds that Davis, the School, and M & A are entitled to summary judgment on Plaintiffs' Title VII claims and that these claims should be dismissed with prejudice.


**3.   State Law Claims**

As a general rule, district courts should decline to exercise supplemental jurisdiction over state law claims in cases, like the one *sub judice*, in which all federal claims are dismissed before trial.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 & n.7 (1988); Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss

state claims when the federal claims to which they are pendent are dismissed."). To determine whether to follow the general rule, courts consider the statutory provisions of 28 U.S.C. § 1367(c) and the relevant factors of judicial economy, convenience, fairness, and comity. See City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 172-73 (1997).

The Court finds that statutorily it may decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3), which provides: "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." The Court additionally finds that the factors of judicial economy, convenience, fairness, and comity, favor dismissal of Plaintiffs' state law claims. First, although trial is scheduled for the July 2007 term of Court, Plaintiffs have filed an Objection to certain discovery Orders entered by the magistrate judge as well as a Motion to Amend their Complaint to include additional state law claims. If either the Objection or Motion are granted, the Court would be required to re-open discovery and continue the trial of this case. The parties, of course, may use all of the discovery obtained in this lawsuit to date in a state court proceeding. Second, because all the parties reside in the tri-county area surrounding Jackson, Mississippi, it would not be inconvenient to try this case in state court.

Additionally, filing a complaint in state court would permit Plaintiffs to pursue both the state law claims alleged in this lawsuit as well as those they seek to add though their Motion to Amend in one proceeding and without the risk of having any of these claims dismissed on the basis of *res judicata*.

Accordingly, the Court finds it should not exercise supplemental jurisdiction over Plaintiffs' state law claims and, therefore, will dismiss these claims without prejudice.  In so doing, the Court finds that the Motions of M & A and the School for Summary Judgment on Plaintiffs' state law claim of intentional infliction of emotional distress should be denied as moot.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that The Motion of Plaintiff Pam Martin to Seal Plaintiff Pam Martin's Deposition Testimony, Plaintiff Susan Chancelor's Deposition Testimony and the Expert Report of Dr. Mary Louise Barksdale [Docket No. 202] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendants Maselle & Associates, Inc., and the Maselle School of Real Estate, Inc., for Relief from Page Limitation [Docket No. 221] is hereby granted.

22

IT IS FURTHER ORDERED that the Motion of Defendants Maselle & Associates, Inc., and Maselle School of Real Estate, Inc., to Strike [220] is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that Motion of Defendant Maselle School of Real Estate, Inc., for Summary Judgment [Docket No. 193] is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that the Motion of Defendant Maselle & Associates, Inc., for Summary Judgment [Docket No. 194] is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that the Motion of Defendant Dave Davis for Summary Judgment [Docket No. 205] is hereby granted.

IT IS FURTHER ORDERED that a Final Judgment will be entered dismissing Plaintiffs' Title VII claims with prejudice and dismissing Plaintiffs' state law claims without prejudice.

IT IS FURTHER ORDERED that all other pending motions in this case are hereby dismissed as moot.

SO ORDERED this the 2nd day of July, 2007.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE

23